UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NUWAVE, LTD., ET AL.,

    Plaintiffs,

v.      Case No. 8:07-cv-1257-T-24 EAJ

ARGYLL EQUITIES, LLC and
M2B, INC.,

    Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants' motions to dismiss (Doc. No. 16, 19). Plaintiffs oppose the motions. (Doc. No. 31).

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level." Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiffs allege the following in their complaint (Doc. No. 2): Between October of 2003 and August of 2004, Plaintiffs invested $7.4 million in an entity known as Skyway Communications Holding Corporation ("Skyway").  Skyway was a corporation that purported to be in the business of attempting to develop and market certain high-end broadband wireless communication technology to the airline industry.  Skyway, however, never possessed the technology or had the capability to develop it.  Thus, Skyway is alleged to have been formed for the purpose of facilitating a classic "pump and dump" scheme designed to defraud investors.  Skyway's President was Brent Kovar, and its Chief Executive Officer was James Kent, and they are alleged to be directly involved in that scheme.

To date, the value of Plaintiffs' investment in Skyway has diminished significantly.  During the first quarter of 2004, the stock of Skyway was trading as high as $1.50 per share, but by March 8, 2005, the stock price had fallen to approximately $ .07 per share.

On December 14, 2004, Plaintiffs filed suit against Skyway, Kovar, and Kent for securities violations relating to the alleged "pump and dump" scheme.[1]  Thereafter, on July 18, 2007, Plaintiffs filed the instant lawsuit, in which they allege that Defendant Argyll Equities,

---

[1] Case No. 8:05-cv-282-T-17-EAK, which was transferred to the Middle District of Florida on February 14, 2005.

LLC ("Argyll"), a company in the business of lending money, and Defendant M2B, Inc. ("M2B"), Argyll's agent, participated in the scheme by entering into a sham loan transaction with Frederic Geffon.

In furtherance of the alleged loan scheme, Plaintiffs contend that in or around December of 2004, Kovar and Kent caused several million shares of Skyway stock to be able to be issued in the name of Geffon. Then, on or around February 4, 2005, Kovar, Kent, Geffon, and unidentified "others" improperly caused eight million shares of Skyway stock to actually be issued to Geffon. Plaintiffs allege that on or about February 7, 2005, Geffon used some of the improperly issued shares as collateral for a loan from Argyll/M2B. The stock that was issued to Geffon was immediately cancelled and replaced by six million shares of stock in Argyll's name and two million shares of stock in M2B's name. Most of the shares were issued, at Geffon's request, without proper authorization from Skyway.

Pursuant to the loan agreement, Argyll/M2B loaned Geffon money at 50% loan-to-value of six million shares of Skyway common stock. Plaintiffs contend that this transaction was never properly reported to the SEC.

Thereafter, on March 28, 2005, Argyll declared the loan to be in default, and Argyll and M2B sold the stock on the open market. Plaintiffs allege that at the time that Argyll/M2B took the Skyway stock as collateral, there was no intent by Argyll/M2B that the loan would ever be repaid. Rather, their intent was that they would immediately place the loan in default and sell the stock on the open market.

Plaintiffs describe this loan transaction as a transaction that "allow[ed] indirectly the sale of stock which Geffon could not do directly and allow[ed] Argyll/M2B to profit." (Doc. No. 2, ¶

27). Plaintiffs contend that "Argyll and M2B were knowledgeable with and active participants in the above described improper loan scheme which dumped additional stock on the market[,] thus further diminishing the value of Skyway stock and, upon information and belief, the above is but one of numerous occasions in which Argyll and M2B participated in the above-described improper loan scheme." (Doc. No. 2, ¶ 30).

As a result, Plaintiffs filed the instant lawsuit against Argyll and M2B. Plaintiffs assert one claim against them–civil conspiracy. Plaintiffs state in the complaint that the claim is based on Argyll and M2B's conspiracy to commit "the violation of state and federal securities laws and fraud." (Doc. No. 2, ¶ 35). In response, Defendants filed the instant motions to dismiss.

**III.  Motions to Dismiss**

In order to adequately state a civil conspiracy claim, a plaintiff must allege that two or more parties agreed to commit an unlawful act or to do a lawful act by unlawful means, that an overt act in furtherance of the conspiracy was done, and that there was a resulting injury to the plaintiff. See American Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067 (11th Cir. 2007); Bivens Gardens Office Building, Inc. v. Barnett Banks of Fla., Inc., 140 F.3d 898, 912 (11th Cir. 1998); Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1998). "Additionally, an actionable conspiracy requires an actionable underlying tort or wrong." Raimi, 702 So. 2d at 1284 (citations omitted).

Defendants move to dismiss Plaintiffs' conspiracy claim based on their belief that it's a claim of conspiracy to engage in securities violations, given that Plaintiffs state such in their complaint. (Doc. No. 2, ¶ 35). Defendants make several arguments as to why such a claim must fail.

4

For example, Defendants argue that there is no recognized cause of action for conspiracy to violate Section 10(b) of the Securities Exchange Act of 1934.[2] See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994); Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 844 (2d Cir. 1998); Bank v. Ernst & Young, 1995 WL 852118, at *3 (S.D. Fla. July 24, 1995).  The Court agrees with Defendants.

In response to Defendants' motions, Plaintiffs back-pedal in their articulation of their conspiracy claim.  Specifically, Plaintiffs now state that their conspiracy claim is not based on a conspiracy to commit securities fraud under the Securities Act of 1933 or the Securities Exchange Act of 1934 (collectively referred to as "the Acts"), it is not a claim for aiding and abetting, or conspiracy to commit, a Section 10(b) violation, nor is it a claim based on a conspiracy to commit a violation of Florida's laws governing securities transactions.  (Doc. No. 31, p. 3).  Given these statements by Plaintiffs, the Court dismisses with prejudice any conspiracy claim in Plaintiffs' complaint to the extent that it is based on securities fraud under the Acts, a Section 10(b) violation, and/or a violation of Florida's laws governing securities transactions.

Plaintiffs now contend that their conspiracy claim is simply a claim for civil conspiracy to commit fraud.  Plaintiffs argue that they have sufficiently pled that Defendants were part of

---

[2]Section 10(b) provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j.

the conspiracy to commit the overall "pump and dump" scheme by making a sham loan to Geffon using improperly issued Skyway stock as collateral while having no intent that the loan would be repaid, with the resulting sale of the collateralized stock diluting the value of Plaintiffs' stock. The Court rejects Plaintiffs' argument that their conspiracy claim is properly pled.

When the underlying tort in a conspiracy claim is fraud, the plaintiff must plead the facts supporting the conspiracy claim with specificity, pursuant to Federal Rule of Civil Procedure 9(b). See Martinez, 480 F.3d at 1067-68. Here, Plaintiffs have made vague, conclusory allegations that undermine, rather than support, their conspiracy theory. For example, there is no factual allegation connecting Defendants to the"pump and dump scheme" beyond the mere conclusory statement that Defendants "assist[ed]" and "participat[ed]" in the scheme. (Doc. No. 2, ¶ 31, 35). However, the facts as alleged by Plaintiffs do not plausibly show a conspiracy, because they do not show that Defendants knew about the "pump and dump" scheme or that they participated in the loan transaction in furtherance of that scheme.

On December 14, 2004, Plaintiffs filed suit against Skyway, Kovar, and Kent for the securities violations relating to the alleged "pump and dump" scheme, yet Defendants' involvement via the loan transaction, as alleged in the complaint, did not occur until February of 2005. The timing of Defendants' "involvement" undermines Plaintiffs' conspiracy theory.

Furthermore, the facts, as alleged by Plaintiffs, show that Defendants made a loan that went bad and that they, too, were victims of the alleged fraud, rather than co-conspirators. Specifically, in February of 2005, Defendants loaned Geffon money with the Skyway stock as collateral. By March 8, 2005, the value of the Skyway stock had dropped to approximately $ .07 per share. On March 28, 2005, Argyll declared the loan to be in default and later sold the de-

valued stock on the open market. While the facts support the inference that Geffon may have been a participant in the scheme, he is not a defendant in this case. Instead, all that is alleged is that Defendants made a loan that went into default.

Furthermore, there is no specific allegations linking Defendants to Skyway, Kovar, or Kent. Rather, the only alleged connection is between Defendants and Geffon through the loan transaction, and Geffon is not alleged to be a Skyway insider, officer, or agent. Additionally, there are no specific factual allegations that support Plaintiffs' contention that Defendants even knew about the "pump and dump" scheme.

Accordingly, the Court finds that Plaintiffs have not alleged enough facts to suggest that Defendants were part of a conspiracy. As such, the Court is going to dismiss their complaint. Defendants urge the Court that the dismissal should be with prejudice, and thus, without leave to amend.

In their response to the motions to dismiss, Plaintiffs state that discovery has revealed other earlier occasions of Defendants' participation in the sham stock loan scheme, including with insiders of Skyway. Given that once again, Plaintiffs simply make a conclusory statement without any underlying facts, the Court is hesitant to allow Plaintiffs an opportunity to amend their complaint. However, given the liberal policy of Federal Rule of Civil Procedure 15(a), the Court will allow Plaintiffs to amend their complaint in order to make sufficient, specific factual allegations that directly link Defendants to, or show Defendants' knowledge of, the alleged fraud. The Court warns Plaintiffs that they will not be given any more opportunities to amend their complaint.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant Argyll Equities, LLC's Request for Judicial Notice (Doc. No. 20) is **GRANTED**.

(2) Defendants' motions to dismiss (Doc. No. 16, 19) are **GRANTED** to the extent that:

(a) The Court **DISMISSES WITH PREJUDICE** the civil conspiracy claim to the extent that it is based on securities fraud under the Acts, Section 10(b) violations, and/or violations of Florida's laws governing securities transactions.

(b) The Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' civil conspiracy claim based on fraud.

(3) Plaintiffs may file an amended complaint by October 30, 2007.  Failure to do so will result in the Court closing this case without further notice.

**DONE AND ORDERED** at Tampa, Florida, this 24th day of October, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record